**October 21, 2013**

# In the Court of Appeals of Georgia

A13A1285. VAUGHN v. THE STATE.

MILLER, Judge.

On March 30, 2011, Mark Anthony Vaughn entered a non-negotiated guilty plea to one count of theft by deception (OCGA § 16-8-3 (a)) from his employer, Rome Electric Motor Works, Inc., and was sentenced to ten years, to serve two and a half with the balance on probation. At the time of his sentencing, the trial court noted that the matter of restitution was to be determined at a later time. Following a hearing on September 26, 2012, after the completion of his prison sentence, Vaughn was ordered to pay his former employer $260,637.02 as restitution.

Vaughn appeals from that order, arguing that the restitution as ordered included amounts taken outside of the dates charged in the accusation and beyond the civil statute of limitation and that the trial court did not follow the mandate of OCGA § 17-14-10. For the reasons set out below, we reverse and remand this case to the trial court.

On appeal from a restitution order, this Court reviews the record "to determine whether each party has met his or her specified burden and whether a restitution award was supported by the preponderance of the evidence." (Citation and punctuation omitted.) *In the Interest of E. W.*, 290 Ga. App. 95, 96 (2) (658 SE2d 854) (2008).

The record shows that the accusation, filed September 15, 2010, charged Vaughn and co-defendant William Hackworth with theft by deception in that they, "*between the dates of the 12th day of January, 2008 and the 10th day of January, 2010*, . . . did then and there obtain property, to wit: MONETARY FUNDS, . . . belonging to ROME ELECTRIC MOTOR WORKS" by facilitating and accepting fraudulent payments for which no goods or services were obtained. (Emphasis supplied.) The amount reportedly taken during that period was approximately $57,000. The restitution order, however, required Vaughn to repay $260,637.02 based on his and Hackworth's theft of funds over a nearly 12-year period from May 1998 through February 2010.

Robert Bowling from Rome Electric testified at the sentencing hearing that Vaughn was in charge of ordering supplies and was allowed to initial his own

invoices, which the company then paid. Hackworth[1] would send in fake invoices, which Vaughn initialed and the company paid. Bowling estimated that about a quarter million dollars had been taken over ten years. During this hearing, Vaughn acknowledged that he had personally benefitted from approximately $70,000 of the stolen money.

William Bowling, brother of Robert and another officer of the company, testified at the restitution hearing and presented a tabulation of all the fraudulent invoices, beginning May 14, 1998 and ending February 12, 2010, totaling $260, 637.02. William Bowling also testified that, when the theft was initially reported to police in 2011, the dates of false invoices reported were from January 12, 2008 through February 21, 2010, amounting to $57,000. Bowling also said that he told the detective that this was just the beginning.

During the restitution hearing, Vaughn argued that restitution should be limited to the period within the dates set out in the accusation and stated that he had relied on the dates and amounts in the accusation and the State's file. Upon the court's inquiring of counsel if he were limited to the dates in the accusation, the State responded "[t]he only thing that I can suggest to the Court, the way the indictment

---

[1] Hackworth died prior to Vaughn's sentencing hearing.

3

read[s] is between two specific dates. Some indictments say on or about a certain date. This one . . . alleged a beginning and an ending date. That was what was presented to the police at the time the arrest was made."

Vaughn argues that the restitution as ordered included amounts taken outside of the dates charged in the accusation and beyond the civil statute of limitation and that the trial court did not follow the mandate of OCGA § 17-14-10. We agree.

Restitution forces criminal defendants to take responsibility for damage they have caused, helps deter crime, and "is punishment when ordered as part of a criminal sentence." *Harris v. State*, 261 Ga. 859, 860 (413 SE2d 439) (1992).

At a restitution hearing, the State has the burden of demonstrating the amount of loss sustained by the victim by the preponderance of the evidence, OCGA § 17-14-7 (b), and the amount of restitution ordered shall not exceed the victim's damages. OCGA § 17-14-9.[2] OCGA § 17-14-2 (2) defines "damages" for purpose of the restitution statute as "all special damages *which a victim could recover against an offender in a civil action, . . . based on the same act or acts for which the offender is*

---

[2] The amount of the victim's damages is only one factor for a court to consider in determining the amount of restitution. The sentencing court must also consider the offender's present financial condition and future earning capacity, as well as the goal of rehabilitation of the offender. OCGA § 17-14-10.

4

*sentenced*[.]" (emphasis supplied). See also *Mayfield v. State*, 307 Ga. App. 630, 631 (2) (b) (705 SE2d 717) (2011). The statute of limitation for a civil suit for recovery of converted funds is four years after the right of action accrues. OCGA § 9-3-32.

As charged, the accusation fell within the four-year statute of limitation for prosecution of theft by deception and was the basis upon which Vaughn was sentenced. OCGA § 17-3-1 (c). Had the State charged Vaughn with theft by deception for the entire 12-year period for which restitution was ordered, it would have been required to allege in the accusation an exception to the statute of limitation[3] in each count of the indictment to which it applied. *Jenkins v. State*, 278 Ga. 598, 604 (1) (B) (604 SE2d 789) (2004) (exception to the statute of limitation must be pled in the indictment if the State is relying on one); *Jannuzzo v. State*, Ga. App. * 3 (1) (Case No. A13A0683, issued July 9, 2013) (State alleged in the indictment that the accused and the crime were unknown to the State, tolling the statute); *State v. Barker*, 277 Ga. App. 84, 87 (3) (625 SE2d 500) (2005) (indictment is fatally defective if it appears

---

[3] The exceptions are where the accused is not usually and publicly a resident of this state; where the accused and the crime are unknown; where the accused is a government officer or employee and the crime charged is theft by conversion of public property while such an officer or employee; and where the accused is a guardian or trustee and the crime charged is theft by conversion of property of the ward or beneficiary. OCGA § 17-3-2.

on its face that the statute of limitation has run unless the indictment also alleges one or more of the exceptions which would remove the bar of the statute). The State did not do so in this case, and there is no evidence that any of the exceptions would have applied.

Although acknowledging the two-year time span included in the accusation, the trial court nonetheless ordered restitution for the entire 12-year period. The trial court, relying on *Stack-Thorpe v. State*, 270 Ga. App. 796, 798-799 (1) (608 SE2d 289) (2004), found that the prosecution was not limited by OCGA § 17-3-1 (c), "as the series of transactions constituted a single theft, the theft was not discovered until February 2009, and the indictment was made within four years after that discovery." While this statement is accurate, as noted above, the indictment in this case did not allege, as required, the tolling statute and, therefore, the prosecution could not go beyond the four-year statute of limitation contained in OCGA § 17-3-1 (c). *Barker*, supra 277 Ga. App. at 87 (3).

Because Vaughn pled guilty, we take this opportunity to overrule *Beall v. State*, 252 Ga. App. 138, 139 (2) (555 SE2d 788) (2001) to the extent that it holds that "entry of a guilty plea waives statute of limitation defenses."

The only case cited in *Beall* for that proposition, *State v. Barrett*, 215 Ga. App. 401 (451 SE2d 82) (1994), involved a negotiated plea agreement which contained an express waiver of the statute of limitation and was based on contract principles. As noted in *Barrett*, supra 215 Ga. App. at 405, there is no absolute bar to a defendant's waiver of the protection of the statutes of limitation.

> A defendant may waive rights which exist for his own benefit, but he may not waive those which belong to the public generally. . . . As the protection afforded by [statutes of limitation] is statutory in origin, does not affect the court's jurisdiction, and is personal to an individual defendant, it is comparable to the speedy trial provisions of OCGA § 17-7-171, which can be waived.

(Citations and punctuation omitted.) *Barrett*, supra 215 Ga. App. at 406-407 (2). Having entered into plea negotiations resulting in his receiving first offender status and having expressly waived his statute of limitation defense in his plea agreement, Barrett was bound by his contractual waiver.

In *Beall v. State*, supra, the accused probate judge pled guilty to an accusation alleging violation of her oath of office without any plea agreement with the State. Following a restitution hearing, Beall was ordered to pay $54,000, which included monies taken during a four month period outside the statute of limitation. This court,

7

citing only *Barrett*, supra, rejected her argument that she could not be required to pay restitution for those four months, stating only that "entry of a guilty plea waives statute of limitation defenses." As set out above, that is not the holding of *Barrett*, and we reverse *Beall*.

Vaughn's plea agreement contained no language indicating that he was waiving his statute of limitation defense. Instead, he explicitly argued at the restitution hearing that the trial court could not assess him damages outside of the statute of limitation.

Therefore, because the trial court ordered restitution beyond the period encompassed by the accusation and the civil statute of limitation, we reverse and remand this case for further proceedings consistent with this opinion.

*Judgment reversed and remanded. Phipps, C.J., Andrews, P. J., Barnes, P.J., Ellington, P.J., Doyle, P.J. , Dillard, McFadden, Boggs, Ray, Branch and McMillian, JJ., concur.*